IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JINDAL TUBULAR USA, LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CASE NO.: _____ |
| | § | |
| ICONIX WATERWORKS (US) INC., | § | |
| f/k/a CORIX WATER PRODUCTS INC.; | § | |
| CORIX WATER PRODUCTS LIMITED | § | |
| PARTNERSHIP; CORIX WATER | § | |
| PRODUCTS (GP) INC., | § | |
|     Defendants. | § | |

### ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule Civil Procedure 57, Jindal Tubular USA, LLC ("Jindal") petitions this Court for a Judgment declaring its rights and legal relations with respect to a matter involving Gilmore Pipe Sales, LLC ("Gilmore") and Defendants Iconix Waterworks (US) Inc. ("ICONIX"), Corix Water Products Limited Partnership and Corix Water Products (GP) Inc. (collectively "CORIX"). Jindal seeks a declaration specifying that: (1) no contract exists between Jindal and CORIX or ICONIX and (2) the Judgment entered in the U.S. District Court for the Southern District of Mississippi relieves Jindal of any liability for damages allegedly caused by piping manufactured and sold to Gilmore for use on CORIX's and/or ICONIX's project. In support, Jindal respectfully shows the Court the following:

### Introduction

1.    The dispute for which Jindal seeks a declaration of its rights and other legal relations arises from an actual controversy over whether Jindal is liable for damages arising from a contract created by Purchase Orders between CORIX and Gilmore for the sale of pipe for use in a construction project in British Columbia. Jindal was not a party to the Purchase Orders, was not

8351100.1

mentioned in the Purchase Orders, did not serve as a guarantor for Gilmore in the Purchase Orders, did not create or issue the Purchase Orders, did not receive the Purchase Orders, and did not sign the Purchase Orders.

2.      Despite Jindal not being a party to, or guarantor for the CORIX contract, CORIX filed a lawsuit in British Columbia claiming that it received non-conforming pipe pursuant to the CORIX contract.  CORIX and/or ICONIX is/are seeking damages in the amount of $875,761.00 Canadian Dollars, plus interest and costs, from Gilmore and Jindal jointly and severally.  As of March 11, 2020, this equates to approximately $636,770.20 U.S. Dollars, not including interest and costs.

**Parties**

3.      Jindal Tubular USA, LLC is a Delaware limited liability company with its principal place of business in Houston, Texas. Its pipe-making plant is located in Port Bienville Industrial Park in Bay St. Louis, Hancock County, Mississippi.  Jindal's managing members are citizens of the State of Texas and the State of Mississippi.

4.      Iconix Waterworks (US) Inc. is a Delaware corporation with its U.S. headquarters located at 1830 16th Street, Snohomish, Washington 98290.  ICONIX is registered to do business in Texas and has a location in Buda, Texas.  ICONIX may be served with process through its registered agent Corporation Service Company D/B/A CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.      Corix Water Products Limited Partnership is a Canadian limited partnership with the citizenship of its partners in Canada.  It is not registered to do business in the State of Texas. It may be served with process by serving the Texas Secretary of State at P.O. Box 12079 Austin, Texas 78711.

6.    Corix Water Products (GP) Inc. is a foreign (Canadian) corporation.  It is not registered to do business in the State of Texas.  It may be served with process by serving the Texas Secretary of State at P.O. Box 12079 Austin, Texas 78711.

7.    On information and belief, ICONIX is a recently-renamed entity, which formerly was CORIX or was the entity which owned, operated, and controlled CORIX.

## Venue

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Jindal undertook actions related to the dispute amongst the parties from its Houston, Texas location.

## Jurisdiction

9.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse, and because the amount in controversy exceeds $75,000.

10.    This Court has personal jurisdiction over ICONIX due to its business location and active business registration within Texas.  It is also subject to personal jurisdiction based upon its actions and inactions with respect to the alleged contract at issue in this lawsuit, which was allegedly entered into in this forum.  ICONIX also conducts business on a continuous and systematic basis in the instant forum and derives a substantial portion of revenue from its business ties in the instant forum.

11.    The Court has personal jurisdiction over the CORIX entities pursuant to Tex. Civ. Prac. & Rem. Code § 17.042 (1). CORIX has alleged in prior judicial proceedings that it has contracted with Jindal for goods, which inherently involve the instant forum as this is the forum from which Jindal performs such contracts in whole or in part.  As such, CORIX has judicially admitted that it has "purposefully availed itself of the privilege of conducting activities within [Texas], thus invoking the benefits and protections of its laws" in accordance with binding Texas

and federal law.  Additionally, CORIX's contacts with Texas are relevant, purposeful, and relate to the cause of action stated herein.

## Factual Allegations Warranting the Declaration

12.     In early May, 2016, the City of Nanaimo ("Nanaimo") solicited bids for pipe and fittings in the construction of the College Park Reservoir Duplicate Water Supply Main, located within its borders in British Columbia, Canada (the "Project").

13.     At all times relevant to this matter, CORIX was in the business of, among other things, designing, supplying, building, and installing local utility infrastructure.

14.     Nanaimo hired CORIX, at the time, a subsidiary to a Canadian corporation called Corix Infrastructure, Inc., to supply, install, and test coated steel pipe and related materials for the Project.

15.     At all times relevant to this matter, Gilmore was in the business of fabricating and distributing steel pipe fittings and related accessories.

16.     CORIX requested a proposal from Gilmore for the supply and delivery of all of the steel pipe required for the Project.

17.     Jindal manufactures spiral weld pipe that services a wide range of industries, in particular, the offshore and onshore oil and gas sector, the urban and rural water sector, and the structural tubing market comprising piling pipe for ports, as well as industrial and commercial buildings.

18.     Gilmore subsequently requested a proposal from Jindal for the manufacturing and supply of steel pipes.

19.     On May 18, 2016, Jindal responded to Gilmore and sent a proposal to supply steel spiral weld pipe to Gilmore.  *See* Ex. A.

4

20.    About a week later, on May 26, 2016, Gilmore submitted a quote to CORIX to supply the pipe for the Project.  The quote did not come from Jindal.  *See* Ex. B.

21.    On June 14, 2016, CORIX sent Gilmore Purchase Order #1069220393, for the steel pipe requirements for the Project.   Although it consists of seven pages, Purchase Order #1069220393 does not mention Jindal at all.  *See* Ex. C.

22.    Gilmore also accepted the proposal from Jindal.  In accepting the proposal, Gilmore agreed to "indemnify, defend, and hold harmless" Jindal "from and against all losses, costs, expenses, liabilities, damages, fines, or penalties, including court costs, reasonable attorney's and professionals' fees and expenses and other litigation or settlement expenses sustained or incurred as a result of a claim, demand, or action made by a third party (including a governmental authority)" against Jindal "arising out of (i) a breach of [Gilmore's] warranties or obligations hereunder, or (ii) a negligent or wrongful act or omission" by Gilmore.  *See* Ex. A. at ¶ 9.

23.    Jindal granted Gilmore access to Jindal's facility for inspection, and while performing the inspection, Gilmore was obligated to "conduct such reviews, inspections, and tests as may be reasonabl[y] required to satisfy [Gilmore] that the pipe conforms to the specifications set forth in the Purchase Order." *Id.* at ¶ 10.

24.    Gilmore also accepted the Risk of Loss "upon tender of delivery at the delivery point specified," which was "FOB Plant." *Id.* at ¶ 12.

25.    Jindal expressly disclaimed any warranty of merchantability or fitness for a particular purpose in relation to the pipe it would supply Gilmore. *Id.* at ¶ 6.

26.    Jindal also warned Gilmore:

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS CONTRACT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES, JINDAL'S MAXIMUM LIABILITY FOR WARRANTY CLAIMS SHALL NOT EXCEED THE LESSER OF (i) [GILMORE'S] ACTUAL COSTS FOR LOCATING, EXCAVATING,

5

REMOVING OR REPAIRING, TRANSPORTING, INSTALLING AND TESTING DAMAGED OR REPLACEMENT PIPE, OR (ii) $100,000.00 FOR EACH FAILURE; AND THE AGGREGATE LIMITATION FOR ALL SUCH COSTS SHALL NOT EXCEED TEN PERCENT (10%) OF THE VALUE OF THE PURCHASE ORDER. *Id.* at ¶ 7.

27.     A month later, Gilmore issued a revised Purchase Order to Jindal for 5,240 units of pipe, at a total price of $336,408.00.  There were no changes in the terms applicable to Jindal and Gilmore.  *See* Ex. D.

28.     On or about August 5, 2016, CORIX issued a second Purchase Order, #1069228539, to Gilmore for the supply and delivery of additional pipe and other items.  Like the prior one issued by CORIX, Purchase Order #1069228539 does not mention Jindal.

29.     Between September 26-30, 2016, Gilmore, through its agents, first took possession of loads of pipe manufactured by Jindal, but instead of delivering it to the Project, or to the fabrication contractor identified in CORIX's contract with Nanaimo, Gilmore delivered it to a fabricator in Utah named Utility Coatings & Fabrication, Inc.[1]

30.     The pipe taken by Gilmore or its agents from Jindal to the different fabricator did not arrive at the Project site until after November 9, 2016, with some loads not arriving until January 17, 2017, despite being in Gilmore's control since September 2016.  Other loads of pipe were taken directly from Jindal to the Project by Gilmore or its agents.

31.     Eventually, a dispute arose as to the effectiveness of the pipe that was delivered by Gilmore to the Project.  Although Jindal made good faith efforts to assist Gilmore in replacing or repairing the pipe Gilmore delivered to Nanaimo, CORIX was never satisfied with the results.

---

[1] Pipe fabrication is the process of welding piping components such as pipes, elbows, tees, flanges, etc., into engineered piping systems in exact accordance with design requirements.  Typical piping fabrication projects involve various activities like storage and handling of piping materials, cutting, cleaning ends, welding, threading, inspecting and testing, painting, insulation installation, etc.

32.    On August 29, 2017, CORIX made demands to Gilmore and Jindal seeking damages in the amount of $875,761.00 Canadian Dollars.

33.    On September 13, 2017, Gilmore demanded indemnity from Jindal, in addition to $553,435.00 in alleged incurred costs defending its provision of supplies rejected by CORIX and Nanaimo.

34.    On September 25, 2017, Jindal responded to both CORIX and Gilmore.  Jindal explained that it was not a party to any contract with CORIX, and hence had no obligations or liability to CORIX.  Jindal also explained that Gilmore was responsible for ensuring that the pipe it delivered conformed to the requirements of Gilmore's agreement with CORIX; that Gilmore accepted the pipe from Jindal upon inspection and testing and took possession of it; and that Gilmore delivered some of the pipe to an unauthorized third party for fabricating for a period of weeks.

35.    In a quandary about its legal rights and obligations, and in order to determine indebtedness and indemnity questions between Jindal and Gilmore, on October 10, 2017, Jindal filed a Complaint for Declaratory Judgment in the U.S. District Court for the Southern District of Mississippi, from which location Gilmore had taken possession of the pipe.  *See* Ex. E, Complaint for Declaratory Judgment.

36.    Following Gilmore's repeated intentional failures to comply with court orders, Jindal was awarded the amount of its unpaid invoices together with a declaration that Jindal is not liable to Gilmore for any "claims by Gilmore that the piping manufactured by Jindal and sold to Gilmore was damaged or caused damage to third parties."  *See* Ex. F, Memorandum Opinion and Order Granting in Part Motion for Sanctions, § III.

37.     Hence, by operation of law, Jindal is not liable to any third parties, including CORIX and/or ICONIX, for damages related to the pipe Gilmore supplied for the Project.

38.     Meanwhile, on December 15, 2017, CORIX filed suit against Gilmore and Jindal in British Columbia, alleging breach of contract and negligence claims against both entities. *See* Ex. G, Notice of Civil Claim (*Canada)*.

39.     CORIX specifically alleged that "contractual obligations arose as between CORIX and the suppliers named in [CORIX's bid to Nanaimo], including [Gilmore] and Jindal." *Id.* at ¶ 45.

40.     CORIX also alleged that "[Gilmore] and Jindal and each of them breached contractual duties owed to CORIX." *Id.* at ¶ 46.

41.     CORIX also alleged that Jindal's breach of contract consisted of it having "failed, neglected or refused to supply Pipe that met the Quality Specifications." *Id.* at ¶ 47.

42.     CORIX at no point has ever produced a copy of any contract to which both CORIX and Jindal were signatories who have made any obligations or arrangements between them.

43.     CORIX has not shown any privity of contract between Jindal and CORIX at any time involving any project.

44.     Following the filing of the Canadian lawsuit, on or about January 23, 2018, CORIX's parent company, Corix Infrastructure Inc., sold "Corix Water Products" to the Deschênes Group Inc.

45.     On information and belief, "Corix Water Products" included CORIX.

46.     In May 2019, "Corix Water Products Inc." changed its name to ICONIX.

47.     The Canadian Lawsuit continues to this day, with no resolution in sight. Throughout the proceedings, Jindal has consistently maintained that no contract exists between it

and CORIX, and that the Canadian Court does not have personal jurisdiction over Jindal.  The Canadian Court has not ruled on the issue of whether the Court has personal jurisdiction over Jindal, which does not have employees or operations in Canada, and the Canadian Court has not yet set a hearing on the issue of personal jurisdiction.

48.     Because the Canadian Lawsuit is ongoing, and requires Jindal to participate at its own expense, this case presents an actual controversy in which Jindal has a definite, concrete injury that is redressable by the Court.

**Cause of Action:  Declaratory Judgment**

49.     Plaintiff adopts and incorporates here by reference all foregoing allegations as if set forth in full.

50.     The Declaratory Judgment Act provides that this Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Section 2202 authorizes courts to award "[f]urther necessary or proper relief based on a declaratory judgment . . . , after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  *Id.* at § 2202.

51.     The present case involves an actual controversy regarding the liability of Jindal for claims arising out of a contractual relationship between CORIX and/or ICONIX and Gilmore.

52.      CORIX and/or ICONIX have filed and are actively pursuing a lawsuit in Canada seeking to hold Jindal liable for damages despite there being no contractual relationship between them.

53.     CORIX and/or ICONIX have also maintained that Jindal committed a tort of negligent misrepresentation based on the pipe supplied to CORIX by Gilmore.

9

54.    This has caused Jindal to expend great amounts of time, money, and resources defending a lawsuit in a foreign country to which it has never consented to jurisdiction.

55.    Jindal asserts that a judicial declaration of no privity of contract between Jindal and CORIX and/or ICONIX is warranted.

56.    Jindal further asserts that a judicial declaration that the prior decision by the U.S. District Court in Mississippi relieves Jindal of any obligation or liability to CORIX and/or ICONIX is warranted.

## **Prayer for Relief**

WHEREFORE, Jindal respectfully requests that the Court:

A.    Declare that no contract between CORIX and/or ICONIX and Jindal exits;

B.    Declare that the Judgment of the U.S. District Court for the Southern District of Mississippi relieves Jindal of any liability for damages allegedly caused by piping manufactured by Jindal and sold to Gilmore for the Project; and

C.    Grant Jindal such further relief to which it may be justly entitled.

RESPECTFULLY SUBMITTED,

By: _/s/ Evan A. Moeller_

    Evan A. Moeller
    State Bar No. 24051067
    Fed. Id. No. 664837
    Evan.moeller@arlaw.com

    **ADAMS AND REESE LLP**
    1221 McKinney Street, Suite 4400
    Houston, Texas 77010
    (713) 652-5151 Telephone
    (713) 652-5152 Facsimile
    ***Attorney-in-charge for Plaintiff Jindal Tubular USA, LLC.***

Of Counsel:

**Adams and Reese LLP**
Jeryn Roberts
State Bar No. 24091802
Fed. Id. No. 3498977